# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-1012/00-2600

_____

Claudia Escudero-Corona,      *
     *
         Petitioner,      *
     *     Petitions for Review of Orders of
       v.      *     the Board of Immigration Appeals.
     *
Immigration and Naturalization      *
Service; Janet Reno, Attorney      *
General of the United States of      *
America,      *
     *
         Respondents.

_____

Submitted: January 17, 2001
Filed:   March 22, 2001

_____

Before WOLLMAN, Chief Judge, LAY and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Claudia Escudero-Corona petitions this court for judicial review of an order of the Board of Immigration Appeals (BIA) denying her application for suspension of deportation on the ground that she could not establish seven years of continuous physical presence in the United States to make her eligible for a suspension of deportation. She also seeks judicial review of a decision by the BIA denying her motion for reconsideration. She asserts that sufficient time has passed that she can now

meet the seven-year requirement and that the BIA erred by concluding that the time stopped accruing when she was served with an order to show cause why she should not be deported. For the reasons that follow, we deny the petitions for review and affirm the decisions of the BIA.

## I.

Ms. Escudero-Corona is a native and citizen of Mexico. She entered the United States without inspection in 1980. In 1994, the INS issued an order to show cause why she should not be deported. She conceded deportability but submitted an application for suspension of deportation pursuant to Section 244(a)(1) of the Immigration and Naturalization Act. See 8 U.S.C. § 1254(a)(1) (1994) (repealed). This provision allowed a deportable alien to petition the INS for a discretionary suspension of deportation if the alien could show (1) physical presence in the United States for a period of not less than seven continuous years immediately preceding the date of her application, (2) good moral character during that time, and (3) that deportation would result in extreme hardship to the alien or an immediate relative. Id.

At a hearing before an immigration judge, Ms. Escudero-Corona testified that in 1980, at the age of 17, she illegally entered the United States with her mother. She asserted that from 1980 until 1989, she and her mother resided in California in the home of a friend named Luz Rodriguez, along with Mrs. Rodriguez's husband and three children, helping with the house work and making tamales. Ms. Escudero-Corona said that throughout those nine years she could not speak English, did not go to school, never saw a doctor, and left the house only to go to one nearby store, though she could not recall its name.

In 1989, Ms. Escudero-Corona conceived a child with a man from Mexico City. She then moved to Minnesota with her mother. In May 1990, she gave birth to a daughter in Minneapolis, where she and her daughter have lived since that time. Ms.

2

Escudero-Corona has learned to speak and write English, she completed her GED, obtained a driver's license, and now holds a job.

Before issuing an oral ruling, the immigration judge notified Ms. Escudero-Corona and her attorney that he had serious doubts concerning whether she met the seven year continuous physical presence requirement to make her eligible for suspension relief.  Counsel proffered no further evidence or testimony on her physical presence other than Ms. Escudero-Corona's own uncorroborated testimony.  The record before the immigration judge contained no correspondence from any family or friends to support her testimony that she continuously resided in the United States prior to 1990.  While her mother was available to testify, Ms. Escudero-Corona's counsel never called upon her to do so.

The immigration judge noted that statements in Ms. Escudero-Corona's medical records were inconsistent with her assertion of continuous physical presence prior to 1990.  The statements indicated that she had used some medication from Mexico and had been on some medication in Mexico before she became pregnant in 1989.  The immigration judge found that in light of the lack of any documentary support for her claim and the contradictory statements in her medical records, Ms. Escudero-Corona had not established that she was continuously present in the United States for seven years immediately preceding her application for suspension of deportation.  Thus, on April 16, 1996, the immigration judge denied her request for suspension of deportation and granted her a voluntary departure, requiring Ms. Escudero-Corona to leave the United States within thirty days.

Ms. Escudero-Corona filed an administrative appeal.  During the pendency of the administrative appeal, she also filed a motion to reopen or remand, attempting to present new evidence to corroborate her claim of continuous physical presence.  Her supposedly "new" evidence consisted of some correspondence (allegedly from the 1980s).  She also asserted that the immigration judge erred by not considering an

affidavit from Mrs. Rodriguez, the woman in California with whom Ms. Escudero-Corona purportedly lived during the 1980s. The BIA found no error in the immigration judge's determination that Ms. Escudero-Corona did not meet the seven year continuous presence requirement. Additionally, the BIA denied the motion to reopen or remand, finding that the newly submitted letters were not new evidence and that in any event, all postmarks but one dated 1990 were illegible. The BIA considered the affidavit of Luz Rodriguez but concluded that it was of "little probative value in view of the apparent disappearance of the affiant." (Petitioner's App. at 53.) Ms. Escudero-Corona then sought judicial review in this court and simultaneously filed a motion to reconsider with the BIA. We granted a stay of deportation pending our review of the case and held the initial petition for judicial review in abeyance pending the BIA's decision on the motion to reconsider.

In her motion to reconsider, Ms. Escudero-Corona urged the BIA to reconsider whether she now met the seven year continuous presence requirement, having been in Minnesota from 1989 through 1998. Relying on two of its own previous decisions, the BIA denied the motion to reconsider. Specifically, the BIA determined that the amendments made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, 3009-546 to 3009-724 (codified as amended in scattered sections of 8 U.S.C.) and the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA), Pub. L. No. 105-100, 111 Stat. 2160, 2193-2201 (codified as amended in scattered sections of 8 U.S.C.) apply to stop the accrual of the seven years once an order to show cause has been served, citing Matter of Nolasco, Interim Decision 3385 (BIA 1999). The BIA also concluded that an alien may not begin to accrue the requisite seven years after the order to show cause has been served, citing Matter of Mendoza-Sandino, Interim Decision 3426 (BIA 2000).

4

Ms. Escudero-Corona sought judicial review of the denial of her motion for reconsideration. We consolidated this petition with her original petition for judicial review.

## II.
### A.

We examine the BIA's factual findings under a substantial evidence standard of review. Tang v. INS, 223 F.3d 713, 718 (8th Cir. 2000). Ms. Escudero-Corona first argues that the BIA erred in affirming the immigration judge's determination that she did not meet the seven year continuous physical presence requirement between the years of 1980 and 1989. She argues that the BIA should have given full weight to the affidavit of Luz Rodriguez, with whom she purportedly lived throughout that time. The affidavit states that Carmen Corona (the petitioner's mother) and her daughter (Ms. Escudero-Corona) lived in Mrs. Rodriguez's home from June 1980 to August 1989. This affidavit was apparently used in relation to the mother's removal proceedings and is dated August 27, 1993. In its opinion, the BIA said that it did "consider the affidavit, but we find that it has little probative value in view of the apparent disappearance of the affiant." (Petitioner's App. at 53.)

We find no reversible error in the BIA's decision to consider but grant little probative weight to this affidavit. For whatever reason, Mrs. Rodriguez could not be located. The affidavit had been signed in connection with another proceeding in 1993, seven years before the BIA's decision in this case. Additionally, no other evidence exists to corroborate Ms. Escudero-Corona's assertion that she lived in California for those nine years in the 1980s. She said she went out only to go to one particular store during the entire time she lived there (but she could not remember the name of the store), she never went any other places, and she never even went for a ride in a car with Mrs. Rodriguez. Despite her allegedly secluded life, however, the record is clear that she conceived a child with a man from Mexico City in 1989, and her medical records

5

bear indications that she may have been in Mexico shortly before this. We see no reason to ascribe any more weight to the Rodriguez affidavit than the BIA was willing to give it.

Ms. Escudero-Corona's mother was available to testify that she and her daughter lived continuously in California during the 1980s, but she was not called upon. Ms. Escudero-Corona blames this lack of evidence on the immigration judge, whom she asserts put off ruling on the matter. The BIA found that the failure to present the mother's testimony resulted in insufficient evidence supporting Ms. Escudero-Corona's explanations of the medical material that contradicted her claim of continuous physical presence.

The record reveals that before issuing his formal oral ruling, the immigration judge informed Ms. Escudero-Corona's attorney, both privately and on the record, of his serious doubts about her proof concerning continuous physical presence in the United States prior to April 16, 1989. (Petitioner's App. at 79.) He mentioned the lack of documentation, the unavailability of Mrs. Rodriguez, and the unpersuasiveness of Ms. Escudero-Corona's testimony. He indicated that it was therefore not necessary for him to proceed with hearing testimony related to the extreme hardship element of the claim in light of her failure to establish seven years of continuous physical presence. Ms. Escudero-Corona's attorney then placed into the record the evidence she would have proffered had she been allowed to demonstrate extreme hardship. At no time during this colloquy did the attorney remind the immigration judge of the availability of Ms. Escudero-Corona's mother or offer to call her to testify as to the petitioner's continuous physical presence. The BIA did not err by not blaming this lack of evidence on the immigration judge.

Ms. Escudero-Corona also contends that a psychologist she intended to rely on for the extreme hardship element of proof would have explained some of the inconsistencies in the medical records and provided an explanation for the petitioner's

lack of participation in society for the nine years she purportedly lived in California. Again, however, Ms. Escudero-Corona's attorney did not call this witness to testify on the continuous presence element, even after being informed of the immigration judge's initial disposition on the issue. Instead, she merely made an oral offer of proof on the content of this witness's potential testimony concerning the extreme hardship element. She did not indicate that the testimony would help explain any concerns with the credibility of Ms. Escudero-Corona's testimony on continuous presence.

"The BIA's determination that Petitioner lacked the seven years' physical presence required for eligibility for suspension of deportation, must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Tang, 223 F.3d at 718 (internal quotations omitted). In light of the testimony offered, the reasonable, substantial, and probative evidence supports the BIA's determination that the petitioner failed to meet the seven year continuous presence requirement.

B.

Ms. Escudero-Corona contends that the IIRIRA and NACARA amendments stopping the accrual of her continuous physical presence upon service of the order to show cause are not applicable to her. We review de novo the BIA's legal conclusions, but we accord substantial deference to the agency's interpretation of the federal statutes that it implements. Vue v. INS, 92 F.3d 696, 699 (8th Cir. 1996). Where a statute is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 842-43 (1984). Where the statute is silent or ambiguous, we consider whether the agency's interpretation "is based on a permissible construction of the statute." Id. at 843.

7

In 1994, the INS served the order to show cause initiating Ms. Escudero-Corona's deportation proceedings. The IIRIRA was signed into law in 1996 while Ms. Escudero-Corona's administrative appeal was pending before the BIA. Among other things, the IIRIRA contains a stop-time rule, terminating the accrual of continuous physical presence at the time when an alien is served with a notice to appear before the INS on deportation charges. See 8 U.S.C. § 1229b(d)(1) (Supp. III 1997) (providing specifically that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served with a notice to appear under section 1229(a)" for removal proceedings).

Ms. Escudero-Corona argues that statutory analysis supports her contention that service of the order to show cause did not stop the accrual of her continuous physical presence in the United States. We disagree. Any questions regarding whether the stop-time rule applies to orders to show cause issued before the enactment of IIRIRA were put to rest by the enactment of NACARA, which specifically provides that the IIRIRA stop-time rule applies to show cause orders issued before, on, or after IIRIRA's enactment date. 8 U.S.C. § 1101 note (Supp. III 1997). See Tang, 223 F.3d at 719; Afolayan v. INS, 219 F.3d 784, 788 (8th Cir. 2000) (stating that the plain and unambiguous language of NACARA dictates that the "stop-time rule applies to deportation proceedings where the INS issued a show cause order prior to the Act's effective date"). Our interpretation is consistent with that of the BIA and with recent decisions from several of our sister circuits. See, e.g., Ram v. INS, No. 99-70918, 2001 WL 173309 at *5 (9th Cir. Feb. 8, 2001); Rojas-Reyes v. INS, 235 F.3d 115, 121 n.1 (2d Cir. 2000); Ashki v. INS, 233 F.3d 913, 918 (6th Cir. 2000); Angel-Ramos v. Reno, 227 F.3d 942, 947 (7th Cir. 2000); Gonzalez-Torres v. INS, 213 F.3d 899, 903 (5th Cir. 2000); Appiah v. INS, 202 F.3d 704, 708 (4th Cir.), cert. denied, 121 S. Ct. 140 (2000). It is clear that "[i]n adopting the NACARA, Congress intended to prevent aliens from accruing additional time needed to reach the requisite seven years of continuous physical presence that they may have lacked when the proceedings against them were commenced." McBride v. INS, 238 F.3d 371, 377 (5th Cir. 2001).

8

Additionally, we have already determined that the BIA's interpretation that the seven-year clock does not restart following the issuance of a deportation order is reasonable and consistent with the statute. Afolayan, 219 F.3d at 789.

Ms. Escudero-Corona's application for suspension was pending in the administrative process when the IIRIRA was enacted. NACARA clarified that the stop-time provision applies retroactively to orders to show cause. The clock stopped at the time of the show cause order in 1994, before Ms. Escudero-Corona had accumulated seven years of continuous physical presence in the United States, and the clock did not begin running anew thereafter. See id. Thus, Ms. Escudero-Corona remains unable to meet the seven-year continuous presence requirement, and we affirm the BIA's ruling on this issue.

## C.

Ms. Escudero-Corona argues that the retroactive application of the IIRIRA and NACARA amendments to the stop-time rule amounts to a deprivation of her rights under the Equal Protection and Due Process Clauses. We consider constitutional claims under a de novo standard of review. McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 493 (1991). We conclude that Ms. Escudero-Corona's arguments are largely foreclosed by existing precedent in our circuit, and to the extent we have not yet reached the issue, we conclude that the reasoning of other circuits is persuasive, foreclosing her remaining claims.

Ms. Escudero-Corona argues that applying these statutes retroactively violates her due process right to challenge the order to show cause through a suspension application. We have held that "[t]he Due Process Clause requires only that an alien receive notice and a fair hearing where the INS must prove by clear, unequivocal, and convincing evidence that the alien is subject to deportation." Afolayan, 219 F.3d at 789. Ms. Escudero-Corona received notice and a fair hearing. Additionally,

retroactive application simply does not violate due process in this case where Congress's intent is clear. "Congress was entitled to change the standards for suspensions of deportation. Where this change shows a clear intent to apply the new stop-time rule to Petitioner[], its application to bar the prospective relief of suspension of deportation does not offend due process." Ram, 2001 WL 173309 at *6.

Ms. Escudero-Corona argues that the amendments violate her equal protection rights by drawing a distinction based upon national origin and similarly-situated suspension applicants which is not capable of surviving either strict scrutiny or the rational basis test. We have specifically held that NACARA does not violate the Equal Protection Clause by impermissibly favoring certain nationalities. Afolayan, 219 F.3d at 789. Additionally, the decision to stop the time with the service of an order to show cause is rational in our view. While it may allow the more elusive aliens to benefit, as Ms. Escudero-Corona contends, some line must be drawn because it would be impossible to control all evasion efforts. The Fourth Circuit has stated the following:

> The stop-time rule is rationally grounded. Congress enacted the rule to remove an alien's incentive for prolonging deportation proceedings in order to become eligible for suspension. See H.R. Rep. No. 104-469(I) (1996) ("Suspension of deportation is often abused by aliens seeking to delay proceedings until 7 years have accrued."). Removing the incentive for delay in the deportation process is a valid government objective, and applying the stop-time rule to aliens . . . who are already in deportation proceedings rationally furthers this purpose.

Appiah, 202 F.3d at 710. Furthermore, "'[e]ligibility for suspension is not a right protected by the Constitution. Suspension of deportation is rather an act of grace that rests in the unfettered discretion of the Attorney General.'" Ashki, 233 F.3d at 921 (quoting Appiah, 202 F.3d at 709) (other internal quotations and omitted). We find this reasoning to be persuasive and conclude there has been no due process or equal protection violation.

10

## III.

Accordingly, we deny the petitions for review, and we affirm the decisions of the BIA.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT