**Francisco ROMERO, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, John Ashcroft and James M. Ziglar, Respondents.**

No. 02–4076.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 7, 2004.

Decided: Feb. 9, 2005.

Christine M. Flowers, Joseph M. Rollo & Associates, PC, Philadelphia, PA (Joseph M. Rollo, Joseph M. Rollo & Associates, PC, Philadelphia, PA, on the brief) for Petitioner.

Michael L. Tabak, Assistant United States Attorney, New York, N.Y. (David N. Kelley, United States Attorney for the Southern District of New York, Sara L. Shudofsky, Assistant United States Attorney, New York, NY, on the brief) for Respondents.

Before: CARDAMONE, JACOBS, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge.

Francisco Romero, a citizen of Mexico, petitions this Court to review a February 13, 2002 order of the Board of Immigration Appeals ("BIA"), denying his request for cancellation of removal under the Immigration and Nationality Act of 1952 ("INA") and ordering his voluntary departure from the United States. Romero argues: (i) that his right to equal protection is violated because the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub.L. No. 105–100, Title II, 111 Stat. 2160, 2193–201 (1997), permits cancellation of removal for similarly situated persons from a list of countries that does not include Mexico; and (ii) that his right to due process was violated when his representative failed to tell the immigration judge ("IJ") that Romero was wed to

a United States citizen. As Romero demonstrates no defect in the BIA's ruling below, that ruling is affirmed and Romero's petition is denied.

## I

Romero entered the United States without inspection in or about February 1991, at or near San Ysidro, California. In 1995, Romero went through a marriage ceremony with Evelyn Ramos, a United States citizen. In December 1995, Romero petitioned the Immigration and Naturalization Service ("INS" or "government") for adjustment of status based on this event. Romero complains that "[t]he record does not indicate whether any decision was ever made on this application for immigration benefits." However, Romero has adduced sparse evidence suggesting that he and Ramos hold themselves out as a married couple. The administrative file indicates that Romero's petition for adjustment of status was denied in March of 1998; that the basis of denial was the couple's failure to appear at a hearing regarding certain suspicious circumstances of the marriage; and that Romero received notice of that determination, but never appealed it.

In October 1999, the INS issued a Notice to Appear for removal proceedings, alleging that Romero was removable pursuant to INA Section 212(a)(6)(A)(i), as "an alien present in the United States who had not been admitted or paroled." Represented before the IJ by one Reverend Robert Vitaglione, Romero conceded removability, but requested cancellation under NACARA. Although Romero further conceded that he was not eligible for relief under NACARA, he argued that NACARA violates "the equal protection rights of all aliens." In December 2000, the IJ determined that Romero was ineligible for cancellation of removal, noted that it lacked jurisdiction to consider the constitutional challenge to NACARA, and granted Romero the right to depart voluntarily. The BIA affirmed the IJ's ruling.

## II

NACARA directs (*inter alia*) that the Attorney General adjust the status—to that of lawful permanent resident—of any alien who: (i) is a national of Cuba or Nicaragua; (ii) has been continuously present in the United States since December 1, 1995; and (iii) filed for permanent resident status before April 1, 2000. NACARA § 202(a)-(b). The government concedes that under NACARA Romero would be entitled to adjustment of his immigration status to that of a lawful permanent resident if he were a national of Cuba or Nicaragua. Romero contends that his ineligibility for adjustment of status violates principles of equal protection, because NACARA affords relief for nationals of certain countries, of which Mexico is not one.

"[T]he power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the [g]overnment's political departments largely immune from judicial control." *Rojas–Reyes v. INS*, 235 F.3d 115, 122 (2d Cir.2000) (alterations in original) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977)); *see also Giusto v. INS*, 9 F.3d 8, 9 (2d Cir.1993) ("Congress has plenary authority to regulate matters of immigration and naturalization . . . ."). "[T]he most exacting level of scrutiny that we will impose on immigration legislation is rational basis review. Under this review, legislation will survive a constitutional challenge so long as there is a facially legitimate and bona fide reason for the law." *Rojas–Reyes*, 235 F.3d at 122 (internal citations and quotation marks omitted).

We are not the first federal court of appeals to consider whether NACARA's

preferential treatment of particular nationalities runs afoul of equal protection principles. Our sister courts that have considered this issue have repeatedly held that NACARA is supported by "facially legitimate and bona fide reason[s]." *Id. See, e.g., Pinho v. INS,* 249 F.3d 183, 190 (3d Cir.2001) ("The special exemptions ... for members of these extremely identifiable groups bear[ ] at least a rational relationship to the legitimate government interests of foreign relations, national security policy, and compliance with on-going government programs.") (internal citation and quotation marks omitted); *Ram v. INS,* 243 F.3d 510, 517 (9th Cir.2001) (explaining that aliens from the NACARA countries took unusual risks in escaping oppressive regimes and war-torn countries, and holding that "this decision to favor aliens from specific war-torn countries must be upheld because it stems from a rational diplomatic decision to encourage such aliens to remain in the United States"); *Appiah v. INS,* 202 F.3d 704, 710 (4th Cir.2000) (holding that "NACARA easily withstands constitutional challenge" and explaining that Congress intended to honor pre-existing understandings with certain groups of aliens). At least one court of appeals has considered—and rejected—the under-breadth argument that Romero makes in his petition to this Court. *See Ashki v. INS,* 233 F.3d 913, 920 (6th Cir.2000) ("Although the NACARA exemptions clearly do not cover all aliens who will face hostile conditions in their homelands, this fact does not make these exemptions irrational.").

We agree with the reasoning of our sister courts, and we hold that NACARA's preferential treatment of Cubans and Nicaraguans over Mexicans meets the standards we apply to immigration decisions made by the political branches of government.

# III

■ Romero contends that his due process rights were violated when his counsel failed to "inform the [immigration] court that the Petitioner was married to a United States citizen and eligible to adjust status pursuant to Section 245(i) of the INA." "As deportation proceedings are civil in nature, aliens in such proceedings are not protected by the Sixth Amendment right to counsel." *U.S. v. Perez,* 330 F.3d 97, 101 (2d Cir.2003). Therefore, to prevail on an ineffective assistance of counsel claim, an alien

> must show that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the [F]ifth [A]mendment due process clause. To show fundamental unfairness, an alien must allege facts sufficient to show 1) that competent counsel would have acted otherwise, and 2) that he was prejudiced by his counsel's performance.

*Id.* at 101 (internal citations and quotation marks omitted).

In his 1995 petition for adjustment of status, Romero asserted that he was married to a United States citizen. That petition was denied in March of 1998, and Romero never appealed that denial. Romero now contends that his representative's failure to raise again Romero's purported marriage during Romero's removal proceeding constituted ineffective assistance of counsel. The government argues procedural bar. However, even assuming that this claim has been preserved and raised, the representation Romero alleges created no "fundamental unfairness."

■ To begin with, it was entirely reasonable and prudent for Romero's counsel to forgo any reference to Romero's purported marriage. The marriage may or may not have been a sham, but Romero's

petition for relief on that basis had been rejected in March 1998, and Romero did not appeal. These circumstances could only impair Romero's credibility on any other issue he would care to raise. In any event, Romero was not prejudiced by his representative's failure to invoke a marriage that had previously been deemed insufficient to merit an alteration of Romero's status; there is little chance the IJ would have deemed the issue relevant in any way that would do Romero any good.

## CONCLUSION

For the foregoing reasons, the ruling of the BIA is affirmed and Romero's petition is denied.