RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARIUSZ TOMASZCZUK,

*Petitioner*,

*v.*

MATTHEW G. WHITAKER, Acting Attorney General,

*Respondent*.

No. 17-4229

On Petition for Review from the Board of Immigration Appeals;
No. A 205 859 732.

Argued: October 18, 2018

Decided and Filed: November 20, 2018

Before: KEITH, CLAY, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeremy Liss, PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP, New York, New York, for Petitioner. Aimee J. Carmichael, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Jeremy Liss, Aidan Synnott, Nora Ahmed, PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP, New York, New York, George P. Mann, Maris J. Liss, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Justin R. Markel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

CLAY, Circuit Judge. Petitioner Mariusz Tomaszczuk petitions this Court to review the November 3, 2017, Decision of the Board of Immigration Appeals ("BIA"), dismissing

Petitioner's appeal of the May 15, 2017, Order of the Immigration Judge ("IJ") denying his application for cancellation of removal. Petitioner was denied relief pursuant to 8 U.S.C. §§ 1101(f)(1) and 1229b(b)(1). For the reasons set forth below, we **DENY** the petition for review.

## BACKGROUND

Petitioner is a native and citizen of Poland. Petitioner's wife is a lawful permanent resident of the United States, and she and Petitioner have a son who is a United States citizen. Petitioner last entered the United States, to remain, in April 1999. The Department of Homeland Security commenced removal proceedings against Petitioner on October 14, 2016, by filing with the immigration court a notice to appear, charging Petitioner with being removable pursuant to 8 U.S.C § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled.

On April 4, 2017, Petitioner filed an application for cancellation of removal. Petitioner's hearing before an Immigration Judge ("IJ") took place on May 8, 2017, at which Petitioner, his wife, and his son testified. On May 15, 2017, the IJ issued an order denying Petitioner's application. The IJ's order found that Petitioner was a "habitual drunkard" under 8 U.S.C. § 1101(f)(1) and was therefore unable to prove that he was a person of "good moral character" during the ten-year period prior to his application, as is required under 8 U.S.C. § 1229b(b)(1) to be eligible for cancellation of removal. The IJ relied on evidence that Petitioner had been convicted five times on drunk driving charges and once as a "Disorderly Person" related to being drunk in public. This latter conviction and two of the drunk driving convictions were within the ten-year period before Petitioner's application, while three of the drunk driving convictions fell outside this period. The IJ cited Petitioner's high blood alcohol content levels at the time of his arrests as evidence of Petitioner's high tolerance, as well as testimony by Petitioner and his family members that he was an alcoholic. The IJ also found that Petitioner was not of good moral character because he had been confined in a penal institution for longer than the statutory limit set forth by 8 U.S.C. § 1101(f)(7).

Petitioner appealed that decision to the Board of Immigration Appeals ("BIA" or "Board"), and on November 3, 2017, the BIA dismissed Petitioner's appeal. The Board disagreed with the IJ's finding as to § 1101(f)(7), but affirmed the IJ's determination that Petitioner was a "habitual drunkard."

Following the Board's decision, Petitioner petitioned this Court for review pursuant to 8 U.S.C. § 1252.

## DISCUSSION

The Attorney General may cancel the scheduled removal of a nonpermanent resident from the United States under various circumstances. 8 U.S.C. § 1229b(b). One such circumstance is where a nonpermanent resident meets the following four requirements: (1) he has been continuously physically present in the United States for at least ten years, (2) he has exhibited good moral character during that time, (3) he has never been convicted of any of a list of enumerated criminal offenses, and (4) he demonstrates that removal would result in "exceptional and extremely unusual hardship" to his family members who are lawfully present in the United States. *Id.* § 1229b(b)(1). An alien applicant bears the burden of proof in establishing these requirements. 8 U.S.C. § 1229a(c)(4)(A). The term "good moral character" is defined to exclude those who are or were, during the relevant ten-year period:

> **(1)** a habitual drunkard;
> **\* \* \***
> **(3)** a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D) [relating to those who engage in or facilitate prostitution or other unlawful commercialized vice], (6)(E) [relating to smugglers], and (10)(A) [relating to practicing polygamists] of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title [relating to crimes of moral turpitude and multiple criminal convictions] and subparagraph (C) thereof [relating to controlled substance traffickers] . . . (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;
> **(4)** one whose income is derived principally from illegal gambling activities;
> **(5)** one who has been convicted of two or more gambling offenses committed during such period;

**(6)** one who has given false testimony for the purpose of obtaining any benefits under this chapter;

**(7)** one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

**(8)** one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43)); or

**(9)** one who at any time has engaged in conduct described in section 1182(a)(3)(E) of this title (relating to assistance in Nazi persecution, participation in genocide, or commission of acts of torture or extrajudicial killings) or 1182(a)(2)(G) of this title (relating to severe violations of religious freedom).

8 U.S.C. § 1101(f).

Petitioner claims on appeal that § 1101(f)(1), the "habitual drunkard" provision, is void for vagueness and violates equal protection.[1] Petitioner also claims that the BIA and IJ violated his Due Process rights by considering impermissible evidence and harboring bias against him. We will look at each claim in turn.

## I.     Void for Vagueness Challenge to § 1101(f)(1)

This Court reviews challenges to the constitutionality of a statute *de novo*. *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012). Petitioner argues that § 1101(f)(1) should be struck down as void for vagueness under the Due Process Clause. Petitioner cites different dictionary definitions and interpretations in case law that the term "habitual drunkard" has produced and argues that this uncertainty of meaning leaves him without fair notice of what the term encompasses.

However, we do not reach the merits of this challenge because we hold that Petitioner is unable to raise it. An individual "must establish that [he or] she has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause" before being allowed to raise a Due Process challenge. *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000).

---

[1]The federal government is not subject to the Fourteenth Amendment's Equal Protection Clause but still must comply with the requirements of that clause. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citing *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)) ("The Fifth Amendment . . . incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment.").

Petitioner "has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation." *Id.* Because Petitioner is a deportable alien with an interest only in discretionary relief, he may not bring this void-for-vagueness challenge under the Due Process Clause. *Id.* at 921.

Petitioner relies on *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) to argue that *Ashki* does not control in this case. However, those cases are inapposite because they involved aliens who only *became* removable by virtue of the statute that the aliens challenged. *See Shuti*, 828 F.3d at 442; *Dimaya*, 138 S. Ct. at 1210–11. By contrast, Petitioner concedes that he is removable regardless of the "habitual drunkard" provision's constitutionality and only argues that its constitutionality might affect his eligibility for discretionary relief. Thus, *Shuti* and *Dimaya* do not affect this Court's holding in *Ashki*.

Petitioner also cites post-*Ashki* cases where this Court purported to recognize some Due Process interest in discretionary relief. *See Montanez-Gonzalez v. Holder*, 780 F.3d 720 (6th Cir. 2015); *Abdallahi v. Holder*, 690 F.3d 467 (6th Cir. 2012). However, *Ashki* was the first case in which this Court directly addressed the issue of whether a deportable alien has a liberty interest in receiving discretionary relief, and in that case we unambiguously held that such an alien lacks such a liberty interest. 233 F.3d at 920–21. This Court recently reaffirmed *Ashki* in *United States v. Estrada*, 876 F.3d 885 (6th Cir. 2017). In that case, we noted that there exists a circuit split on the question of whether "an alien has [a] constitutional right to be informed of eligibility for, or to be considered for, discretionary relief," and we recognized that this Court answers that question in the negative. *Id.* at 888–89. Because the cases that Petitioner cites conflict with *Ashki* and because a panel of this Court cannot overturn a prior panel, *Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 770 (6th Cir. 2004), the decisions that Petitioner cites do not supersede *Ashki*, which is the controlling case.

For this reason, we do not reach the merits of Petitioner's void for vagueness challenge.

## II.    Equal Protection Challenge to § 1101(f)(1)

Petitioner's Equal Protection challenge to § 1101(f)(1) is without merit.  We must decide whether there is a rational basis for saying that a "habitual drunkard" lacks "good moral character," and we hold that § 1101(f)(1) survives this deferential review.

It is undisputed in this case that the statute is subject to rational basis review.  *Ashki*, 233 F.3d at 920 ("[D]istinctions made by the federal government among aliens receive only rational basis scrutiny.").  The Supreme Court has stated that rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  "[A] classification in a statute [subject only to rational basis review] comes to us bearing a strong presumption of validity" such that "[w]here there are 'plausible reasons' for Congress' action, 'our inquiry is at an end.'"  *Id.* at 313–14 (quoting *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).  Likewise, a classification in a statute is permissible even when it is both over- and underinclusive.  *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316–17 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 776–77 (1975).  Such imprecision is allowed in part because "the legislature must be allowed leeway to approach a perceived problem incrementally."  *Beach Commc'ns, Inc.*, 508 U.S. at 316 (citing *Williamson v. Lee Optical of Okla., Inc.,* 348 U.S. 483 (1955)).

To decide whether being a "habitual drunkard" is rationally related to having "good moral character," we must first define "habitual drunkard."  Neither the Supreme Court nor this Court has interpreted the term; indeed, few courts have.  A BIA decision over sixty years ago held that "chronic alcohol[ism]" could constitute habitual drunkenness.  *Matter of H-,* 6 I. & N. Dec. 614, 616 (BIA 1955).  Recently, the Ninth Circuit, sitting en banc, was divided on the question of whether alcoholism alone was enough to fit the definition of habitual drunkard, or whether there needed to be some harmful conduct associated with one's drinking.  *See Ledezma-Cosino v. Sessions*, 857 F.3d 1042 (9th Cir. 2017) (en banc).

The dictionary definitions of "habitual drunkard" from around the time the statute was passed are not very helpful.  Two entries emphasize the loss of willpower; another requires "a fixed habit of frequently getting drunk, though not oftener drunk than sober, and though sober

for weeks at a time;" another states that "[i]t is not necessary that the person shall have lost his will power . . . or that he be intoxicated so often as to incapacitate him from attending to his business for a considerable portion of time." *Black's Law Dictionary* 839 (4th ed. 1951) (citations omitted). However, "[w]hether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words . . . [but can also turn on] the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)).

Two canons of statutory interpretation lead us to conclude that alcoholism alone does not make an individual a "habitual drunkard," and that there must be some harmful conduct associated with one's drinking to fit this definition. First, the canon that different words in a statute have different meanings supports this conclusion, since Congress used both "habitual drunkard" and "chronic alcoholic" in the Immigration and Nationality Act. *Compare* Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 182 (codified as amended at 8 U.S.C. § 1182) (generally rendering ineligible for visas and excluding from the United States "[a]liens who are narcotic drug addicts or chronic alcoholics"),[2] *with id.*, 66 Stat. 172 (codified as amended at 8 U.S.C. § 1101(f)(1)) (excluding from the category of "person[s] of good moral character" those who during the relevant period were "habitual drunkard[s]"). If Congress had intended "habitual drunkard" to mean "chronic alcoholic," Congress would have simply used the latter term in § 1101(f). Because Congress instead used "habitual drunkard," we can reasonably infer that the term means something different from "alcoholic."

Further, the canon of *noscitur a sociis* makes clear that Congress intended the term "habitual drunkard" to focus on an individual's conduct, as opposed to his or her status as an alcoholic alone. "[T]he commonsense canon of *noscitur a sociis* . . . counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Using this canon, we find that each term in § 1101(f) focuses on conduct rather than status. For example, § 1101(f)(4) and (5) refer to those "whose income is derived principally from illegal gambling activities" and "who ha[ve] been convicted

---

[2]The statute as amended no longer includes this language. *See* 8 U.S.C. § 1182.

of two or more gambling offenses" during the relevant period, respectively; they do not refer to being a gambling addict.**3** Congress also incorporated by reference into § 1101(f) some items from the list in what is now § 1182, but notably Congress excluded other items on the list, such as "[a]liens who are feeble-minded;" "[a]liens who are insane;" "[a]liens afflicted with psychopathic personality, epilepsy, or a mental defect;" and, as discussed, "[a]liens who are narcotic drug addicts or chronic alcoholics . . . ." Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 172. These excluded items focus on a person's status, whereas the categories included in § 1101(f) focus on conduct. This suggests Congress intended "habitual drunkard" to do the same.

Together, this is sufficient evidence to conclude that Congress intended the term "habitual drunkard" to focus on the *conduct* associated with an applicant's drinking, rather than solely on whether the applicant has the *status* of an alcoholic.

Because the term "habitual drunkard" focuses on an individual's conduct—*i.e.*, the harm to others or negative consequences to society that results from one's drinking—Petitioner's equal protection challenge falls flat. A tendency to drink to excess and engage in harmful conduct is, under the statute, rationally related to lacking good moral character, and the statute therefore survives rational basis review. As discussed above, this is so regardless of whether the categorization is somewhat over- or underinclusive.

Because Congress could find that habitual drunkenness was rationally related to lacking good moral character, we hold that § 1101(f)(1) does not violate the Equal Protection Clause.

## III.    Due Process Claims

Petitioner alleges that the Immigration Judge and the BIA violated his Due Process rights by considering evidence outside of the relevant ten-year period and by harboring bias against him. This Court lacks jurisdiction over these claims because Petitioner did not properly preserve them.

---

**3**These provisions were essentially the same in the original 1952 INA. *See* Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 182–83.

This Court may review a final order for removal "only if the alien has exhausted all administrative remedies available to the alien as a matter of right."   8 U.S.C. § 1252(d). Accordingly, this Court may review only those claims "properly presented to the BIA and considered on their merits." *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).  "[An] alien must raise correctable procedural errors to the BIA" in order to preserve them for this Court's review, *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006), because the BIA "can then direct the IJ to fix what needs fixing." *Viuda de Mejia v. Session*, 691 F. App'x 245, 249 (6th Cir. 2017).  Claims alleging errors related to the consideration of evidence or related to agency bias against the petitioner fall within the category of correctable procedural errors and are thus subject to the statutory exhaustion requirement.  *See, e.g.*, *Peci v. Holder*, 379 F. App'x 499, 506 (6th Cir. 2010); *Aichai Hu v. Holder*, 335 F. App'x 510, 514 (6th Cir. 2009); *Diallo v. Holder*, 312 F. App'x 790, 797 (6th Cir. 2009); *Myftari v. Mukasey*, 302 F. App'x 401, 409 (6th Cir. 2008).

Petitioner failed to satisfy the exhaustion requirement in this case because these claims were not included in either Petitioner's notice of appeal to the BIA or his supporting brief.

Because Petitioner failed to exhaust his administrative remedies, we lack jurisdiction over these claims.

## CONCLUSION

For the reasons set forth above, we **DENY** the petition for review.