## Case No. 13,234.

### In re SPENSER.

[5 Sawy. 195; 18 Alb. Law J. 83, 153; 6 Reporter, 294; 1 N. J. Law J. 248; 2 Tex. Law J. 42, 116; 13 Am. Law Rev. 167; 3 Cin. Law Bul. 1003; 10 Chi. Leg. News, 355; 7 N. Y. Wkly. Dig. 29; 24 Int. Rev. Rec. 331; 7 Cent. Law J. 84.][1]

Circuit Court, D. Oregon. July 8, 1878.

ALIENS—NATURALIZATION—MORAL CHARACTER—
PARDON.

1. An alien, to be entitled to admission to citizenship, must first prove that he has behaved as a man of good moral character during all the period of his residence in the United States.

2. What constitutes good moral character may vary in some respects in different times and places, but a person who commits perjury does not behave as a man of good moral character and is not, therefore, entitled to admission to citizenship.

3. A pardon is prospective and not retrospective in its operation; and while it absolves the offender from the guilt of his offense and relieves him from the legal disabilities consequent thereon, it does not obliterate or wipe out the fact of the commission of the crime, so that it cannot be made to appear on an application to be admitted to citizenship.

Application to be admitted to citizenship.
The plaintiff in propria persona.

DEADY, District Judge. William Spenser, an alien, applies to "be admitted to become a citizen of the United States" under section 2165, Rev. St. From the evidence it satisfactorily appears that he duly declared his intentions and has continuously resided in the United States—the state of Oregon—at least since 1870. He is therefore entitled to be admitted to citizenship if it appears that during such residence "he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed towards the good order and happiness of the same." Rev. St. § 2165, subd. 3.

The proof shows that the applicant has resided in Oregon, near The Dalles, for more than eight years; that in 1876, and after he had declared his intentions, he was duly convicted in the circuit court of the state, for Wasco county, of the crime of perjury, committed by swearing falsely as a witness in a case in said court, in which he was a party, and sentenced to five years' imprisonment in the penitentiary; that after being in prison fifteen months and eight days he was unqualifiedly pardoned by the governor, upon, as the pardon recites, the petition of sundry citizens of Wasco county and because it appeared that there were doubts as to his guilt, and unless he was released from prison there was danger that he would lose his homestead.

Upon this state of facts two questions arise:

1. Has the applicant "behaved as a man of good moral character" within the meaning of the statute; and, 2. What is the effect of the pardon in this respect? In the first place, during what time is the behavior of the applicant open to consideration? The statute supra declares that "it shall be made to appear to the satisfaction of the court admitting such alien that he has resided within the United States five years at least * * * and that during that time he has behaved as a man of good moral character," etc. Is an alien who has behaved as a man of good moral character during the five years immediately preceding his application, but who had not so behaved during his residence in the United States prior thereto entitled to admission? I think not. The behavior of the applicant during all the time of his residence within the United States is material. The good of the country does not require, and it does not appear to be the policy of the law to promote, the naturalization of aliens who have at any time during their residence in the United States behaved otherwise than as persons of good moral character. The citizenship of the country is sufficiently alloyed and debased by the presence of immoral natives without the addition of those born in foreign countries.

The applicant must not simply have sustained a good reputation, but his conduct must have been such as comports with a good character. In other words, he must have behaved—conducted himself—as a man of good moral character ordinarily would, should or does. Character consists of the qualities which constitute the individual; reputation the sum of opinions entertained concerning him. The former is interior, the latter external. The one is the substance, the other the shadow. N. Y. Pen. Code, 120; 8 Barb. 603.

What is "a good moral character" within the meaning of the statute may not be easy of determination in all cases. The standard may vary from one generation to another, and probably the average man of the country is as high as it can be set. In one age and country duelling, drinking and gaming are considered immoral, and in another they are regarded as very venial sins at most. The only authorities I have been able to find upon this subject are the cases of Ex parte Douglas and Ex parte Sandberg, cited in 2 Bright. Fed. Dig. 25, from 5 West. Jur. 171. These cases hold that an alien who lives in a state of polygamy, or believes that polygamy may be rightfully practiced in defiance of the laws to the contrary, is not entitled to citizenship.

Upon general principles it would seem that whatever is forbidden by the law of the land ought to be considered, for the time being, immoral, within the purview of this statute. And it may be said with good reason that a person who violates the law thereby manifests, in a greater or less degree, that he

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 6 Reporter, 294, and 7 N. Y. Wkly. Dig. 29, contain only partial reports.]

is not "well disposed to the good order and happiness" of the country. Good behavior—that behavior for which a person reasonably suspected of an intention to misbehave, may be required to give surety, is defined to be conduct authorized by law, and bad behavior such as the law punishes. Bouv. Dict. verb. "Behavior"; 2 Bl. Comm. 251, 256. But perjury is not only malum prohibitum, but malum in se. At both the civil and common law it was classed among the crimina falsi, and wherever, as in this case, it affected the administration of justice, by introducing falsehood and fraud therein, it was, at common law, deemed infamous, and the person committing it held incompetent as a witness and unworthy of credit. U. S. v. Block [Case No. 14,609].

There can be no question, then, but that a person who commits perjury has so far behaved as a man of bad moral character. But it may be said that an alien who has otherwise behaved as a man of good moral character during a residence in the country of at least five years, ought not to be denied admission to citizenship on account of the commission in that time of a single illegal or immoral act. This suggestion is based upon the idea that it is sufficient if the behavior of the applicant was generally good—that the good preponderated over the evil. In some sense this may be correct. For instance, the law of the state prohibits gaming and the unlicensed sale of spirituous liquors. These acts thereby become immoral. But their criminality consists in their being prohibited and not because they are deemed to be intrinsically wrong—mala in se. Now, if an applicant for naturalization, whose behavior, during a period of five or more years, was otherwise good, was shown to have committed during that time either of those or similar crimes, I am not prepared to say that his application ought to be denied on account of his behavior. And yet it is clear that anything like habitual gaming or vending of liquors under such circumstances would constitute bad behavior—immoral behavior—and be a bar under the statute to admission to citizenship. But in the case of murder, robbery, theft, bribery, or perjury, it seems to me that a single instance of the commission of either of them is enough to prevent the admission. The burden of proof is upon the applicant to prove "to the satisfaction of the court" that during the period of his probation he has conducted himself as a moral man. But when the proof shows that he has committed an infamous crime, it is not possible, in my judgment, to find that his behavior has been such as to entitle him under the statute to receive the privilege and power of American citizenship.

What effect, if any, does the pardon have upon the application? By the constitution of this state (article 5, § 14) the governor has power to grant pardons, after conviction for all offenses, except treason, "subject to such regulations as may be prescribed by law."

The Criminal Code makes no restrictions upon the power of the governor, except that he must first require the judge or district attorney who tried the case to give him a statement of the facts. Or. Civ. Code, c. 32. This pardon does not show that this statement was asked for or obtained, nor does it appear therefrom what gave rise to the alleged doubts as to the defendant's guilt. But this suggestion cannot affect the truth or operation of the judgment which established his guilt. So far then as this application is concerned, the matter stands thus: The applicant was duly convicted of perjury, and the governor, in the exercise of that mercy which belongs to him in his official character, has pardoned him for reasons of his own, that are immaterial to this inquiry.

The pardon is now produced by the applicant to show not only that his crime has been forgiven him, but that it never was, and therefore it cannot now, be relied upon to prove that he has not behaved as a man of good moral character during his residence in the United States. In Ex parte Garland, 4 Wall. [71 U. S.] 380, Mr. Justice Field speaking for a majority of the court says: "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eyes of the law the offender is as innocent as if he had never committed the offense." This is probably as strong and unqualified a statement of the scope and efficacy of a pardon as can be found in the books. And yet I do not suppose the opinion is to be understood as going the length of holding that while the party is to be deemed innocent of the crime by reason of the pardon from and after the taking effect thereof, that it is also to be deemed that he never did commit the crime or was convicted of it. The effect of the pardon is prospective and not retrospective. It removes the guilt and restores the party to a state of innocence. But it does not change the past and cannot annihilate the established fact that he was guilty of the offense. And such, I think, is the doctrine of the authorities cited in support of this opinion, namely, 4 Bl. Comm. 402; 6 Bac. tit. "Pardon," H. Blackstone's language is: "The effect of such a pardon by the king is to make the offender a new man; to acquit him of all corporal penalties and forfeitures annexed to that offense for which he obtained his pardon; and not so much to restore him to his former, as to give him a new credit and capacity." And the author goes on to state that a pardon does not purify the blood during the period it was corrupted by conviction, and gives the following illustration: "Yet if a person attainted receives the king's pardon and afterwards hath a son, that son may be heir to his father, because the father being made a new man might transmit new inheritable blood; though had he been born before the pardon he could never have inher-

ited at all." Bacon says a pardon makes the party, "as it were, a new man." It removes the punishment and "legal disabilities consequent on the crime." It restores his competency to be a witness, "but yet his credit must be left to the jury." From these authorities it is plain that a pardon does not operate retrospectively. The offender is purged of his guilt, and thenceforth he is an innocent man; but the past is not obliterated nor the fact that he had committed the crime wiped out.

Apply these principles to this case. By the commission of the crime the applicant was guilty of misbehavior, within the meaning of the statute, during his residence in the United States. The pardon has absolved him from the guilt of the act, and relieved him from the legal disabilities consequent thereupon. But it has not done away with the fact of his conviction. It does not operate retrospectively. The answer to the question: Has he behaved as a man of good moral character? must still be in the negative; for the fact remains, notwithstanding the pardon, that the applicant was guilty of the crime of perjury—did behave otherwise than as a man of good moral character.

The fact that the applicant cannot obtain title to his homestead, unless he is admitted to citizenship, cannot affect the consideration of the question. Doubtless, in this respect, the matter operates as a hardship upon him. But this only illustrates the truth of the proverb—"The way of transgressors is hard," and in the long run it is better for the world that it should be so.

The proof is not satisfactory that the applicant has behaved as a man of good moral character during his residence in the United States, but the contrary, and therefore the application is denied. But the applicant having no counsel, and the matter having been submitted without argument, and being now res judicata, if he shall be hereafter advised that there is probable error in this ruling, he may apply within a reasonable time to set aside the judgment denying his application, and for a rehearing thereof.