OPINION
GRABER, Circuit Judge:
Petitioner Salomon Ledezma-Cosino, a native and citizen of Mexico, petitions for. review of a final order of the Board of Immigration Appeals (“BIA”), which affirmed an immigration judge’s (“IJ”) denial of Petitioner’s application for cancellation of removal. We deny the petition.[1]
FACTUAL AND PROCEDURAL BACKGROUND
Petitioner entered the United States from Mexico, without admission or inspection, in 1987. On May 7, 2008, police in Carlsbad, California, arrested him on charges of driving under the influence of intoxicants and driving with a suspended license. A few days later, the Department of Homeland Security issued a notice to appear, charging Petitioner with remova-bility under 8 U.S.C. § 1182(a)(6)(A)(i) because he was an alien present in the United States without having been admitted or paroled.
Petitioner appeared, with counsel, before an IJ, admitted all the factual allegations in the notice to appear, and conceded removability. But, as now relevant, he applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(l). To qualify for cancellation of removal, Petitioner had to demonstrate, among other things, that he was “a person of good moral character” during the 10-year period preceding his application for cancellation of removal. Id. § 1229b(b)(l)(B). Congress has defined the term “good moral character” to exclude anyone who has been a “habitual drunkard” during the relevant period. Id. § 1101(f)(1).
After a hearing on the merits, the IJ denied Petitioner’s application for cancellation of removal. The IJ found that Petitioner had not met his burden of establishing that he was “a person of good moral character” because, during the requisite 10-year period, he had been a “habitual drunkard.” The BIA affirmed that ground of decision and dismissed the appeal. A timely petition for review to this court followed. We have jurisdiction pursuant to 8 U.S.C. § 1252.
A three-judge panel granted the petition, vacated the BIA’s decision, and remanded the matter for further proceedings on the ground that the “habitual drunkard” provision violates equal protection principles. Ledezma-Cosino v. Lynch, 819 F.3d 1070 (9th Cir. 2016). Upon grant of rehearing en banc, the panel’s opinion was vacated. Ledezma-Cosino v. Lynch, 839 F.3d 805 (9th Cir. 2016) (order).
STANDARDS OF REVIEW
We review the agency’s factual findings for substantial evidence. Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015). We must uphold the findings unless the record compels a contrary conclusion. Id. We review de novo whether a statutory *1046 provision is constitutional. Vilchez v. Holder, 682 F.3d 1195, 1198 (9th Cir. 2012).
DISCUSSION
To qualify for cancellation of removal, Petitioner had the burden of establishing that he:
(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
(B) has been a person of good moral character during such period;
(C) has not been convicted of [specified offenses]; and
(D) establishes that removal would result in exceptional and extremely unusual hardship to [certain family members].
8 U.S.C. § 1229b(b)(l). Congress has defined the term “good moral character” in the following way:
For the purposes of this chapter—
No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established,- is, or was—
(1) a habitual drunkardf.]
Id. § 1101(f).
In his opening brief to this court, Petitioner argued that substantial evidence does not support the agency’s finding that he was a “habitual drunkard.” He also argued that, under due process principles, the statutory “habitual drunkard” provision is unconstitutionally vague. The three-judge panel ordered supplemental briefing on additional constitutional issues, including whether the statutory provision violates equal protection principles. We address those three issues in turn.[2]
A. Substantial evidence supports the finding that Petitioner was a “habitual drunkard. ”
The immigration statutes do not define the term “habitual drunkard.” “When a statute does not define a term, we generally interpret that term by employing the ordinary, contemporary, and common meaning of the words that Congress used.” Arizona v. Tohono O’odham Nation, 818 F.3d 549, 556 (9th Cir. 2016) (internal quotation marks omitted). The ordinary meaning of “habitual drunkard” is a person who regularly drinks alcoholic beverages to excess. See, e.g., Black’s Law Dictionary 587 (4th ed. 1951) (defining “habitual drunkard” as “[h]e is a drunkard whose habit it is to get drunk; whose ebriety has become habitual,” citing a case that refers to a person who has been proved to be repeatedly drunk within a limited period); Black’s Law Dictionary 607, 827 (10th ed. 2014) (defining “habitual drunkard” as, among other things, “[s]omeone who habitually consumes intoxicating substances excessively; esp., one who is often intoxicated”).
Notably, not all alcoholics are habitual drunkards. As the government emphasizes in its brief to us, the statute asks whether a person’s conduct during the relevant time period meets the definition; the person’s status as an alcoholic, or not, is irrelevant to the inquiry. We know that Congress did not intend to equate “habitual drunkard” with “alcoholic” because, elsewhere in the statute, Congress used the term “alcoholic.” See 8 U.S.C. § 1101(f)(1) (1952) (defining those who lack “good moral character” for certain purposes to include “habitual drunkard[s]”); 8 U.S.C. § 1182(a)(5) (1952) (defining excludable aliens to include “[a]liens who are narcotic *1047 drug addicts or chronic alcoholics”); SEC v. McCarthy, 322 F.3d 650, 656 (9th Cir. 2003) (“It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words.”).
Here, the record amply supports the agency’s finding that Petitioner was a habitual drunkard. In 2010, treating doctors recorded a “more than ten year history of heavy alcohol abuse,” during which time Petitioner drank “1 liter of tequila per day on the average.” In 2008, he was convicted of driving under the influence. During Petitioner’s removal proceedings, Petitioner’s daughter testified that he had “a drinking problem” and that his liver had failed because of “[t]oo much alcohol,” “[t]oo much drinking.” At a minimum, the evidence does not compel the conclusion that Petitioner was not a habitual drunkard.[3]
The dissenting opinion argues that the term “habitual drunkard” encompasses only those who “cause[] harm to other persons or the community.” Dissent at 1058. We need not decide whether “public harm” is a necessary component of the “habitual drunkard” definition. In making its determination that Petitioner was a habitual drunkard, the BIA expressly noted that Petitioner had been convicted of driving under the influence. Driving under the influence is, self-evidently, a public harm. At a minimum, the record does not compel the contrary result. We therefore disagree with the dissenting opinion that further proceedings are necessary in this case, even if public harm is required.
B. The statutory “habitual drunkard” provision is not unconstitutionally vague.
A statute is unconstitutionally vague if it “is so standardless that it authorizes or encourages seriously discriminatory enforcement” or if it “fails to provide a person of ordinary intelligence fair notice of what is prohibited.” United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). As just noted, the term “habitual drunkard” readily lends itself to an objective factual inquiry. And whatever uncertainty the term “habitual drunkard” may raise in borderline cases, a person of ordinary intelligence would have fair notice that the term encompasses an average daily consumption of one liter of tequila for a 10-year period, leading to a conviction for driving under the influence. Because Petitioner has engaged in conduct that is clearly covered, he “cannot complain of the vagueness of the law as applied to the conduct of others.” Holder v. Humanitarian Law Project, 561 U.S. 1, 19, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (internal quotation marks omitted). Because the statute is not unconstitutionally vague under the criminal law standard, it necessarily satisfies any lesser vagueness standard that might apply in a non-criminal context. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).
*1048 C. The statutory “habitual drunkard” provision does not violate equal protection principles.
“Where, as here, the Congress has neither invaded a substantive constitutional right or freedom, nor enacted legislation that purposefully operates to the detriment of a suspect class, the only requirement of equal protection is that congressional action be rationally related to a legitimate governmental interest.” Harris v. McRae, 448 U.S. 297, 326, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). “A legislative classification must be wholly irrational to violate equal protection.” De Martinez v. Ashcroft, 374 F.3d 759, 764 (9th Cir. 2004) (internal quotation marks omitted). Petitioner bears the burden “to negate every conceivable basis which might have supported the [legislative] distinction.” Angelotti Chiropractic, Inc. v. Baker, 791 F.3d 1075, 1086 (9th Cir. 2015), cert. denied, — U.S.-, 136 S.Ct. 2379, 195 L.Ed.2d 274 (2016) (internal quotation marks omitted).
Congress reasonably could have concluded that, because persons who regularly drink alcoholic beverages to excess pose increased risks to themselves and to others, cancellation of removal was unwarranted. We see nothing irrational about that legislative choice, which furthers the legitimate governmental interest in public safety. Nor does it matter that Congress has permitted cancellation of removal for other groups who may pose similar risks. “[I]n ‘the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.’ A legislature may address a problem ‘one step at a time,’ or even ‘select one phase of one field and apply a remedy there, neglecting the others.’ ” Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) (quoting Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)); see also McDonald v. Bd. of Election Comm’rs, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) (“[A] legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.”).
Petitioner does not seriously dispute the foregoing analysis. Instead, he asserts that it is irrational to classify habitual drunkards as persons who lack good moral character. Petitioner misunderstands the nature of the equal protection inquiry.
The constitutional inquiry is limited to assessing congressional action. “[T]he only requirement of equal protection is that congressional action be rationally related to a legitimate governmental interest.” McRae, 448 U.S. at 326, 100 S.Ct. 2671. “Where there are plausible reasons for Congress’ action, our inquiry is at an end.” FCC v. Beach Commc’ns, Inc., 508 U.S. 307, 313-14, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (internal quotation marks omitted).
Here, Congress’ action was the denial of cancellation of removal to habitual drunkards. It is irrelevant, for purposes of analyzing the equal protection claim, whether habitual drunkards lack good moral character. Congress achieved its result by using an intermediate category of persons who lack “good moral character” and by then defining that category to include habitual drunkards, among others. But the specific term, “good moral character,” has no significance under rational basis review, which does not require a court to account for all of a statute’s text, just whether the statute is rationally related to a legitimate governmental interest. Congress could have chosen any phrase for the intermediate category—-“special class of persons not eligible for cancellation of removal,” for example—and the effect would be the same. Or Congress could have eliminated *1049 the intermediate label altogether and simply listed behaviors that would disqualify applicants from obtaining cancellation of removal—and again the effect would be the same. The intermediate label is therefore of no constitutional moment, even if we were to agree that the label is unfortunate, outdated, or inaccurate.
The Supreme Court’s decision in Beach Communications is instructive on this point. Congress required persons to obtain a franchise if they wished to operate a “cable system,” 47 U.S.C. § 541, and Congress defined that term to encompass some facilities but not others, 47 U.S.C. § 522(7). The Supreme Court addressed an equal protection challenge to the statutory scheme by asking whether the congressional action—requiring operators of some facilities to obtain a franchise but not requiring operators of other facilities to obtain a franchise—was irrational. Beach Commc’ns, 508 U.S. at 317-20, 113 S.Ct. 2096. The Court did not ask whether, in the abstract, it was rational for Congress to define the term “cable system” in the manner that Congress had chosen.
That same approach applies here. We must ask whether the operative congressional action is rational, not whether the mere definition of a statutory term is rational. Because the denial of cancellation of removal to habitual drunkards is rationally related to the legitimate governmental interest in public safety, Petitioner’s equal protection argument fails.
Judge Kozinski’s concurring opinion faults us for applying ordinary rational basis review; the concurrence asserts that an even more deferential standard applies. But we have consistently held, citing the same eases that the concurrence cites, that ordinary rational basis review is the appropriate standard in the immigration context. See, e.g., Hernandez-Mancilla v. Holder, 633 F.3d 1182, 1185 (9th Cir. 2011) (“We review equal protection challenges to federal immigration laws under the rational basis standard.... ”); Ablang v. Reno, 52 F.3d 801, 804 (9th Cir. 1995) (holding that the deferential test described by the Supreme Court “is equivalent to the rational basis test typically applied in equal protection cases”).[4] Our sister circuits agree.[5] Because Petitioner’s equal protection fails under the ordinary rational basis test, this case provides no reason to question that longstanding approach.
Petition DENIED.

. Judges Graber, Clifton, Murguia, and Owens join this opinion in full. Judges Kozinski, McKeown, Bea, Ikuta, and Watford join Parts A and B only. Accordingly, this opinion states the view of the court with respect to Parts A and B, and it states a plurality view with respect to Part C. All nine judges who are not dissenting concur in the result.

. The government advances alternative grounds to reject the constitutional challenges. We need not, and do not, reach them.

. The dissenting opinion begins with a false premise: that the BIA denied Petitioner relief "simply because he is a recovering alcoholic.” Dissent at 1053. Fairly read, the BIA's opinion relied solely on Petitioner's conduct. For example, the BIA noted that Petitioner "admitted to drinking excessively for the 1-year period leading up to his 2010 hospital visit, but minimized his behavior outside of this period.” (Emphasis added.) Moreover, whether Petitioner stopped drinking after the relevant 10-year statutory period is irrelevant as a matter of law.

. Accord Masnauskas v. Gonzales, 432 F.3d 1067, 1071 (9th Cir. 2005); Taniguchi v. Schultz, 303 F.3d 950, 957 (9th Cir. 2002); Ram v. INS, 243 F.3d 510, 517 (9th Cir. 2001); Friend v. Reno, 172 F.3d 638, 645-46 (9th Cir. 1999); United States v. Viramontes-Alvarado, 149 F.3d 912, 916 (9th Cir. 1998); Wauchope v. U.S. Dep’t of State, 985 F.2d 1407, 1414 n.3 (9th Cir. 1993); United States v. Barajas-Guillen, 632 F.2d 749, 752 (9th Cir. 1980).

. E.g., Ashki v. INS, 233 F.3d 913, 919-20 (6th Cir. 2000); Breyer v. Meissner, 214 F.3d 416, 422 n.6 (3d Cir. 2000); Azizi v. Thornburgh, 908 F.2d 1130, 1133 & n.2 (2d Cir. 1990).