# Matter of CASTILLO-PEREZ, Respondent

*Decided by Attorney General October 25, 2019*

U.S. Department of Justice
Office of the Attorney General

(1) The Immigration and Nationality Act's "good moral character" standard requires adherence to the generally accepted moral conventions of the community, and criminal activity is probative of non-adherence to those conventions.

(2) Evidence of two or more convictions for driving under the influence during the relevant period establishes a presumption that an alien lacks good moral character under INA § 101(f), 8 U.S.C. § 1101(f).

(3) Because only aliens who possessed good moral character for a 10-year period are eligible for cancellation of removal under section 240A(b) of the INA, 8 U.S.C. § 1229b(b), such evidence also presumptively establishes that the alien's application for that discretionary relief should be denied.

## BEFORE THE ATTORNEY GENERAL

On December 3, 2018, Acting Attorney General Matthew G. Whitaker directed the Board of Immigration Appeals to refer this case to the Attorney General for review. See 8 C.F.R. § 1003.1(h)(1)(i). Acting Attorney General Whitaker invited the parties and interested amici to submit briefs addressing questions relevant to the disposition of the case. *Matter of Castillo-Perez*, 27 I&N Dec. 495 (A.G. 2018).

For the reasons set forth in the accompanying opinion, I affirm the Board's order vacating the immigration judge's decision to grant the respondent cancellation of removal. I hold that, when assessing an alien's good moral character under section 101(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(f), evidence of two or more convictions for driving under the influence during the relevant period establishes a rebuttable presumption that the alien lacked good moral character during that time. Because only aliens who possessed good moral character for a 10-year period are eligible for cancellation of removal under section 240A(b) of the INA, 8 U.S.C. § 1229b(b), such evidence also presumptively establishes that the alien is not eligible for that relief.

Section 240A(b)(1) of the Immigration and Nationality Act ("INA" or "Act") grants the Attorney General the discretion to cancel the removal and adjust the status of an inadmissible or deportable alien who shows that his removal would result in exceptional and extremely unusual hardship to his

family and, among other things, that he has been "a person of good moral character" for the 10 years preceding his application. 8 U.S.C. § 1229b(b)(1).

In this case, the immigration judge granted the respondent's application for cancellation of removal despite the respondent's multiple convictions for driving under the influence ("DUI") and other criminal history.[1]  On appeal, the Board of Immigration Appeals ("Board") vacated the immigration judge's decision and ordered the respondent removed to Mexico.  Acting Attorney General Matthew G. Whitaker subsequently directed the Board to refer this case to him for review.  See 8 C.F.R. § 1003.1(h)(1)(i).  He invited the parties and any interested amici to brief relevant points, including the correct standard for assessing good moral character under the INA and the impact of multiple convictions for DUI on whether an alien should be granted cancellation of removal.  *Matter of Castillo-Perez*, 27 I&N Dec. 495 (A.G. 2018).

For the reasons set forth below, I affirm the Board's order.  I conclude that, when assessing an alien's good moral character under INA § 101(f), 8 U.S.C. § 1101(f), evidence of two or more DUI convictions during the relevant period establishes a rebuttable presumption that the alien lacked good moral character during that time.  Because the Attorney General may only cancel removal of an alien who has been a person of good moral character during a 10-year period, see INA § 240A(b), 8 U.S.C. § 1229b(b), such evidence also presumptively establishes that the alien is not eligible for that relief.  Here, because the evidence of the respondent's efforts to rehabilitate himself is insufficient to overcome this presumption, the Board correctly vacated the immigration judge's decision to grant cancellation of removal.

## I.

Section 240A(b)(1) of the INA authorizes the Attorney General to cancel removal and adjust the status of an alien who:

---

[1]  This opinion uses the term "DUI" to mean all state and federal impaired-driving offenses, including "driving while intoxicated," "operating under the influence," and the like, that make it unlawful for an individual to operate a motor vehicle while impaired.  This term does not include lesser included offenses, such as negligent driving, that do not require proof of impairment.  Although DUIs are the offenses at issue here, nothing in this opinion prevents immigration judges or the Board of Immigration Appeals from taking into account other convictions, such as negligent driving, in determining whether to grant cancellation of removal.

(A)  has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B)   has been a person of good moral character during such period;

(C)  has not been convicted of an offense under [certain specified sections of the INA]; and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).  The Attorney General's judgment on this matter is discretionary.  *See Moncrieffe v. Holder*, 569 U.S. 184, 204 (2013); *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 581 (2010).  As with all discretionary forms of relief from removal, the alien bears the burden of proving that he both "satisfies the applicable eligibility requirements" for cancellation of removal and "merits a favorable exercise of discretion."  INA § 240(c)(4)(A), 8 U.S.C. § 1229a(c)(4)(A); *see also, e.g., Matter of Gomez-Beltran*, 26 I&N Dec. 765, 766 (BIA 2016); *Matter of C-V-T-*, 22 I&N Dec. 7, 10 (BIA 1998).

In this case, the critical eligibility requirement concerns the Act's "good moral character" provision.  The concept of good moral character has been part of the United States' immigration laws since the earliest days of the Republic.  The first federal naturalization statute required that any alien applying for naturalization "mak[e] proof to the satisfaction of [a] court, that he is a person of good character."  Act of Mar. 26, 1790, ch. 3, 1 Stat. 103, 103.  Congress rephrased the standard as "good moral character" in the second naturalization law, Act of Jan. 29, 1795, ch. 20, § 1, 1 Stat. 414, 414, and it remains a requirement for naturalization to this day, INA § 316(a), 8 U.S.C. § 1427(a).  The good moral character standard has proliferated throughout the INA and is now a prerequisite to eligibility for numerous forms of immigration relief.  *See, e.g.*, INA § 240B(b)(1)(B), 8 U.S.C. § 1229c(b)(1)(B) (voluntary departure); INA § 245(l)(1)(B), 8 U.S.C. § 1255(l)(1)(B) (adjustment of status for trafficking victims).

Despite the ubiquity of the good moral character standard, the INA "does not specifically define what 'good moral character' is"—but it does "quite explicitly state[] what it is *not*."  *United States v. Jean-Baptiste*, 395 F.3d 1190, 1193 (11th Cir. 2005).  Section 101(f) of the Act provides that "[n]o

person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was," a person falling within any of eight listed categories. 8 U.S.C. § 1101(f). Those categories include, among others, "a habitual drunkard," "one who has given false testimony for the purpose of obtaining any benefits under [the INA]," and "one who at any time has been convicted of an aggravated felony." *Id*. § 1101(f)(1), (6), (8). The provision's so-called "catch-all clause" then explains: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." *Id*. § 1101(f). In other words, an alien may lack good moral character even if he is not within one of those eight enumerated classes.

Long-standing judicial precedent holds that good moral character under the immigration laws requires adherence to, as Judge Learned Hand put it, "the generally accepted moral conventions" of the community. *United States v. Francioso*, 164 F.2d 163, 163 (2d Cir. 1947); *see also* Petition of De Leo, 75 F. Supp. 896, 900 (W.D. Pa. 1948) (good moral character "results from acts and conduct of an individual, and is of such a character as measures up to the standards of average citizens of the community in which the alien resides"); *In re Spenser*, 22 F. Cas. 921, 921 (C.C.D. Or. 1878) (No. 13,234) ("probably the average man of the country is as high as [the standard] can be set"); *Black's Law Dictionary* 808 (10th ed. 2014) (defining good moral character as a "pattern of behavior that is consistent with the community's current ethical standards and that shows an absence of deceit or morally reprehensible conduct"). Similarly, the regulation governing claims of good moral character for naturalization purposes requires the Department of Homeland Security ("DHS") to consider "the standards of the average citizen in the community of residence" in assessing such claims. 8 C.F.R. § 316.10(a)(2). Although a "moral conventions" test may sometimes be "difficult" to apply, *Repouille v. United States*, 165 F.2d 152, 153 (2d Cir. 1947) (L. Hand, J.), that does not mean it lacks discernible content.

An alien's criminal record is highly probative of whether he possesses good moral character. "It is not open to doubt," the Supreme Court has explained, "that the commission of crime . . . has some relation to the question of character." *Hawker v. New York*, 170 U.S. 189, 196 (1898). At the same time, a criminal record is not an absolute prerequisite to concluding that an alien lacks good moral character. Congress has identified "habitual drunkard[s]," for example, as persons who lack good moral character even when they have no criminal convictions. INA § 101(f)(1), 8 U.S.C. § 1101(f)(1).

## II.

The respondent, a native and national of Mexico, has lived in the United States without admission or parole since 1997. He is married, has three U.S.-citizen children, and works as a mason for a construction company. He also has a criminal record. On two separate occasions in 2001, and again in 2006, he was arrested for assault and battery of his wife. In 2004, he was charged with public drunkenness, and in 2005, he was convicted of negligent driving. Most relevant for present purposes, he was convicted of DUI in 2010 and 2012. *See* Va. Code Ann. § 18.2-266. The respondent admitted in the immigration court that his excessive consumption of alcohol was a major factor in each of these episodes. Immig. Ct. Ex. 3, Tab L, Resp.'s Aff. ¶ 8 ("I have been involved in several incidents that resulted in criminal charges being filed against me. In each case, the excessive consumption of alcohol was a major factor."). The respondent stopped drinking and completed an alcohol-safety program after his last DUI conviction, and he regularly attends Alcoholics Anonymous meetings.

DHS initiated removal proceedings against the respondent in February 2010. He conceded removability and applied for cancellation of removal, which the immigration judge granted in 2016. In a written opinion, the immigration judge concluded that the respondent had shown good moral character. The immigration judge first stated that the respondent was not subject to any "automatic bar" to a finding of good moral character. Then the immigration judge explained that, while he was "troubled by [the respondent's] alcohol-related convictions," they were outweighed by his work history, his support for his family, and especially his "rehabilitation efforts" related to his previous alcohol abuse. The immigration judge further held that the respondent satisfied the other statutory requirements for cancellation of removal and warranted relief as a matter of discretion.

The Board disagreed, holding that the respondent had failed to establish that his removal would result in the requisite "exceptional and extremely unusual hardship" to a qualifying relative. INA § 240A(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D). More pertinently, it held in the alternative that the respondent had not demonstrated good moral character and did not warrant cancellation of removal as an exercise of the Board's discretion. The Board therefore vacated the immigration judge's ruling and ordered the respondent removed to Mexico. Acting Attorney General Whitaker subsequently directed the Board to refer the case for review.

## III.

Cancellation of removal is a coveted and scarce form of relief. Under the INA, the Attorney General may cancel the removal of only 4,000 aliens per year. INA § 240A(e)(1), 8 U.S.C. § 1229b(e)(1). As the Ninth Circuit has recognized, "[i]n 1997, the first year that the quota was in effect, the limit was reached in the month of February." *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1029 n.9 (2005), *abrogated on other grounds by Holder v. Martinez Gutierrez*, 566 U.S. 583 (2012). Because immigration judges continued to "reach[] the annual 4,000 limitation early in the fiscal year," they began "reserving" decisions on many applications until subsequent fiscal years, contributing to backlogs and delays in the immigration adjudication system. Notice of Proposed Rulemaking, *Procedures Further Implementing the Annual Limitation on Suspension of Deportation and Cancellation of Removal*, 81 Fed. Reg. 86,291, 86,294 (Nov. 30, 2016). As a result, according to the Executive Office for Immigration Review, 3,500 cancellation of removal slots have been filled on the first day of each of the last five fiscal years. The other 500 slots are set aside to be granted to detained aliens throughout the year.

With demand for cancellation of removal well outstripping supply, immigration judges should grant such relief, in an evenhanded way, only to the most deserving candidates. *Cf.* Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100 Stat. 3359, 3384 ("the immigration laws of the United States should be enforced vigorously and uniformly"). This case presents an opportunity to promote the uniform and fair enforcement of the immigration laws by clarifying how an alien's DUI convictions affect his eligibility for cancellation of removal.

## A.

Multiple DUI convictions during the relevant period are strong evidence that an alien lacked good moral character during that time and is thus not eligible for cancellation of removal.

An alien with multiple DUI convictions likely lacks good moral character under the catch-all clause of section 101(f) of the INA. 8 U.S.C. § 1101(f) ("The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."). Good moral character requires adherence to the generally accepted moral conventions of the community, and criminal activity is probative of non-adherence to those conventions. *See supra* Part I. This country has spoken clearly on the morality of DUI. All 50 States have

criminalized it, *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2166 (2016), reflecting a national consensus that drunk and other forms of impaired driving are unacceptable conduct that imposes intolerable harms on society, *see id.* ("Drunk drivers take a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year."); *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2531 (2019) (plurality opinion) (noting "the country's efforts over the years to address the terrible problem of drunk driving"); *Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1047 (9th Cir. 2017) (en banc) ("Driving under the influence is, self-evidently, a public harm."). Multiple DUI convictions represent a repeated failure to meet the community's moral standards, rather than a "single lapse" that would be less probative of moral character. *Matter of B-*, 1 I&N Dec. 611, 612 (BIA 1943).[2]

Even setting good moral character aside, an alien with multiple DUI convictions would likely be denied cancellation of removal as a purely discretionary matter. *See Moncrieffe*, 569 U.S. at 204 ("The Attorney General may, in his discretion, . . . deny relief if he concludes the negative equities outweigh the positive equities of the noncitizen's case[.]"). Multiple DUI convictions are a serious blemish on a person's record and reflect disregard for the safety of others and for the law. Although "there is no inflexible standard for determining who should be granted discretionary relief," the Board has identified an array of factors that should be considered in deciding whether to grant cancellation of removal and other forms of

---

[2] Multiple DUI convictions that involve alcohol should also prompt an immigration judge to assess whether the alien is or was a "habitual drunkard" categorically lacking good moral character under section 101(f)(1) of the INA, 8 U.S.C. § 1101(f)(1). A habitual drunkard is "a person who regularly drinks alcoholic beverages to excess." *Ledezma-Cosino*, 857 F.3d at 1046. DHS presents uncontroverted, publicly available data showing that DUI arrests account for only a small fraction of all driving-while-impaired episodes, and that the average DUI arrestee drives impaired dozens of times before ever being arrested. DHS Br. 11–14. Other studies further support the conclusion that a typical person with multiple DUI convictions drinks to excess with regularity. *See, e.g.*, Howard J. Shaffer et al., *The Epidemiology of Psychiatric Disorders Among Repeat DUI Offenders Accepting a Treatment-Sentencing Option*, 75 J. Consulting & Clinical Psychol. 795, 802 (2007) ("Almost 100% of our repeat DUI sample qualified for a lifetime diagnosis of alcohol abuse or dependence, and three quarters of the sample met criteria for one of those diagnoses within the past year."); Ralph K. Jones & John H. Lacey, *State of Knowledge of Alcohol-Impaired Driving: Research on Repeat DWI Offenders* 18 (2000) (repeat offenders "often have alcohol problems" and "commonly suffer from alcohol addiction"); *cf.* Amy Jewett et al., *Alcohol-Impaired Driving Among Adults — United States*, 2012, 64 Morbidity & Mortality Wkly. Rep. 814, 814 (2015) ("the 4% of the adult population who reported binge drinking at least four times per month accounted for 61% of all alcohol-impaired driving episodes").

discretionary relief under the Act. *C-V-T-*, 22 I&N Dec. at 11. An alien's criminal record—including its "nature, recency, and seriousness"—is a key factor. *Id.* In that analysis, "[m]ore serious misconduct necessarily weighs more heavily against an exercise of discretion than does less serious misconduct. Therefore, an alien must present 'additional offsetting favorable evidence' to counterbalance an adverse factor such as serious criminal activity." *Matter of Sotelo-Sotelo*, 23 I&N Dec. 201, 203 (BIA 2001) (en banc) (quoting *Matter of Marin*, 16 I&N Dec. 581, 585 (BIA 1978)). Given the reckless and dangerous nature of the crime of DUI and the limited number of aliens who may be granted cancellation of removal each year, aliens with multiple DUI convictions are likely undeserving of such discretionary relief.

Multiple DUI convictions during the relevant period are thus strong evidence that the alien was not a person of good moral character during that time and is ineligible for cancellation of removal. But I do not hold that they are conclusive evidence. There could be an unusual case in which an alien can establish that the multiple convictions were an aberration and can show good moral character. To do so, the respondent must overcome the strong evidence attributable to those multiple convictions by establishing good moral character. *See* 8 C.F.R. § 1240.8(d). But a respondent may not make this showing merely by demonstrating that he reformed himself after those convictions by, for instance, addressing a problem with substance abuse. The statute requires that good moral character be shown over the "continuous period of not less than 10 years immediately preceding" the application. INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1). The alien thus must show that he had good moral character even during the period within which he committed the DUI offenses. An alien's efforts to reform or rehabilitate himself after multiple DUI convictions are commendable, but they do not themselves demonstrate good moral character during the period that includes the convictions. Absent substantial relevant and credible contrary evidence, multiple DUI convictions require that the immigration judge deny cancellation of removal.

## B.

Imposing the foregoing presumption is an appropriate exercise of my authority under the INA. The Attorney General has recognized similar presumptions in the past to channel the discretion of immigration judges and promote the uniform administration of the immigration laws. In *Matter of Jean*, for example, Attorney General Ashcroft established that aliens who have committed violent or dangerous crimes may not be granted discretionary waivers under section 209(c) of the INA, 8 U.S.C. § 1159(c),

except in "extraordinary circumstances."  23 I&N Dec. 373, 383 (2002); *see also Mejia v. Gonzales*, 499 F.3d 991, 996 (9th Cir. 2007) (upholding a regulation codifying the *Matter of Jean* presumption).  Along the same lines, in *Matter of Y-L-*, Attorney General Ashcroft concluded that "aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes'" for purposes of section 241(b)(3)(B)(ii) of the Act, 8 U.S.C. § 1231(b)(3)(B)(ii), and that "[o]nly under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible."  23 I&N Dec. 270, 274 (2002).

The Board also regularly employs rebuttable presumptions.  *See, e.g., Matter of Valdez*, 27 I&N Dec. 496, 499 (2018) ("an alien's signature on an immigration application establishes a strong presumption that he or she knows the contents of the application and has assented to them"); *Matter of Acosta*, 27 I&N Dec. 420, 432 (2018) ("once the DHS has established that a respondent has a criminal conviction at the trial level and that the time for filing a direct appeal has passed, a presumption arises that the conviction is final for immigration purposes").  Like those decisions, this opinion recognizes a rebuttable presumption that will promote the consistent application of the immigration laws.

# IV.

Under the principles set forth above, the Board's order vacating the immigration judge's decision was correct.  The respondent's multiple DUI convictions warrant a presumption that he was not a person of good moral character during the requisite 10-year period and is not eligible for cancellation of removal.  Nothing in the record rebuts that presumption.  In determining that the respondent's positive attributes outweighed his criminal history, the immigration judge "place[d] particular weight [on] the respondent's rehabilitation efforts."  But as noted above, rehabilitative efforts, standing alone, do not overcome the presumption that an alien with multiple DUI convictions is ineligible for cancellation of removal.  The Board was right to hold that the respondent's criminal record, along with his "longstanding alcohol abuse and negative immigration history," foreclosed him from establishing the good moral character required for cancellation of removal.  The record shows that the respondent failed to adhere to the community's moral standards during the decade at issue.  The respondent's failure to satisfy the good moral character requirement forecloses cancellation of removal, and the Board correctly vacated the immigration judge's decision to grant the respondent relief.

Congress has required a showing of good moral character as a condition of eligibility for cancellation of removal. A person who consumes drugs or alcohol and then repeatedly gets behind the wheel of a vehicle while impaired demonstrates a character inconsistent with the Nation's moral standards, because he places not only his life but the lives of innocents on the road in grave danger. *See Birchfield*, 136 S. Ct. at 2178. An alien's DUI record is critically important in assessing whether he is eligible for discretionary relief from removal, especially when the alien is seeking to be one of the mere 4,000 aliens who may receive cancellation of removal per year. A record of multiple DUIs should presumptively foreclose this relief.

In accordance with the foregoing, I hold that evidence of two or more DUI convictions during the relevant period establishes a presumption that an alien lacks good moral character under INA § 101(f), 8 U.S.C. § 1101(f). Because only aliens who possessed good moral character for a 10-year period are eligible for cancellation of removal under section 240A(b) of the INA, 8 U.S.C. § 1229b(b), such evidence also presumptively establishes that the alien's application for that discretionary relief should be denied. The DUI convictions of the respondent in this case establish such a presumption that is not overcome by the respondent's subsequent efforts at rehabilitation. The Board correctly held that the respondent is ineligible for cancellation of removal. The Board's decision is therefore affirmed. I decline to address in the first instance the respondent's argument that he is eligible for adjustment of status, without precluding the Board from considering this question on remand in connection with the respondent's pending request to reopen or reconsider.[3]

---

[3] I note, however, that adjustment of status is similarly a discretionary benefit that *may* be granted to an applicant who meets general statutory qualifications. *See* INA § 245(a), 8 U.S.C. § 1255(a). Although not specifically at issue here, any decision to grant or deny adjustment of status, or a remand to pursue an application for adjustment of status, should include a careful analysis of whether an applicant with multiple DUI convictions merits such relief as a matter of discretion.