# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 3, 2022

Lyle W. Cayce
Clerk

No. 21-60045

Marco Kevin Ramirez-Lara,

*Petitioner,*

*versus*

Merrick Garland, *U.S. Attorney General,*

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A204 722 865

Before Stewart, Elrod, and Graves, *Circuit Judges.*
Jennifer Walker Elrod, *Circuit Judge:*\*

Marco Kevin Ramirez-Lara, nearly 33 years old, petitions for review of an order of the Board of Immigration Appeals ordering his removal to Mexico, where he has not been since he was three years old. He contends that he was "waved through" into the United States at a port of entry as a child. If true, he would not be removable as charged and might be eligible for

---

\* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-60045

adjustment of status. Because Ramirez-Lara has shown that the BIA abused its discretion in holding that he was not waved through into the United States, we GRANT in part and DISMISS in part the petition for review.

I.

Ramirez-Lara's mother brought him from Mexico to the United States when he was three years old. Now almost thirty years later, Ramirez-Lara has never been back. He has lived in San Antonio ever since, where he attended elementary, middle, high school, and one year of college. In 2017, Ramirez-Lara got married to a United States citizen, a former high-school classmate and a registered nurse.

Shortly before their marriage, Ramirez-Lara was convicted of driving while intoxicated, a misdemeanor offense.[1] In 2018, he was sentenced and given a one-year probation. In February of 2019, while in a meeting with his probation officer, the Department of Homeland Security served Ramirez-Lara with a notice to appear. The notice charged Ramirez-Lara as removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled.

A.

Before the immigration judge, Ramirez-Lara argued that he was "waved through" by an inspections officer at the port of entry. If true, Ramirez-Lara would be lawfully admitted to the United States and therefore not—as charged—removable. *See Matter of Quilantan*, 25 I. & N. Dec. 285, 290–91 (BIA 2010). In *Quilantan*, the BIA held, reaffirming a line of its cases, that an alien who "physically presents [him]self for questioning and makes

---

[1] This was Ramirez-Lara's second DWI-related offense. In 2013, he was arrested for driving while intoxicated, though he ultimately pleaded guilty to a charge of obstructing a highway.

no knowing false claim to citizenship . . . , even though [he] volunteers no information and is asked no questions by the immigration authorities," satisfies the definition of "inspected and admitted" in 8 U.S.C. § 1255(a), the adjustment of status statute. *Quilantan*, 25 I. & N. Dec. at 293. In doing so, it held that IIRIRA's definition of "admission" and "admitted" in 8 U.S.C. § 1101(a)(13)(A) "continue[s] to denote procedural regularity for purposes of adjustment of status, rather than compliance with substantive legal requirements." *Id.* at 290. Following *Quilantan*, Ramirez-Lara argued that he was admitted—and therefore not removable—when he was "waved through" into the United States as a young child.

Ramirez-Lara's grandmother, Berta de Lara, and mother, Arcelia de Lara, testified on his behalf before the IJ. Taken together, they testified to the following series of events.

In 1993, Arcelia decided to leave Mexico with her son to visit the United States. Arcelia's mother, Berta, and Arcelia's sister, Georgina, resided in the United States as lawful permanent residents. Upon hearing that Arcelia and Ramirez-Lara were coming to the United States, Berta and Georgina crossed the border into Mexico to accompany them. The five met in Nuevo Laredo and boarded a bus bound for the border.

When the bus arrived at the port of entry, Berta and Georgina were seated in the front of the bus. Arcelia, who had been seated further back, left the sleeping Ramirez-Lara with Berta when she deboarded to apply for her permit. After receiving her permit, Arcelia returned to her seat. When an immigration officer boarded the bus to check the passengers' documentation, Ramirez-Lara began to cry. At the immigration officer's suggestion, Georgina returned Ramirez-Lara to his mother and then returned to her seat.

When the immigration officer reached Arcelia, he looked at her papers and told her that she was "good." He did not ask her anything about

No. 21-60045

documents for Ramirez-Lara. The immigration officer finished checking documentation, stepped off the bus, and told the driver that "all was good and to continue." From there, the family entered the United States and arrived in San Antonio.

Georgina, however, did not appear to testify. On cross examination, the government attorney pressed Berta and Arcelia on Georgina's absence and whether they heard Georgina's conversation with the immigration officer—the implication being that Georgina may have falsely represented Ramirez-Lara's status. Berta, who sat next to Georgina on the bus, testified that Georgina and the immigration officer had a conversation in English that she could not understand. And Arcelia, who was sitting in the back, testified that she could not hear their conversation.

In an oral decision, the immigration judge sustained the charge of removability, concluding that Ramirez-Lara had not carried his burden to show that he was lawfully admitted. It determined that Georgina's inability to testify about her conversation with the immigration officer was a "critical gap in th[e] evidence." Because no one could testify to the nature of Georgina's conversation with the immigration official—including whether she falsely represented Ramirez-Lara's immigration status—the IJ was "not able to conclude" that Ramirez-Lara was waved through.

Accordingly, Ramirez-Lara filed a motion to reconsider and included an affidavit from Georgina. In it, Georgina explained that her husband prohibited her from appearing to testify because of her severe anxiety. Georgina confirmed that she had traveled with Berta, Arcelia, and Ramirez-Lara from Mexico to San Antonio. But she testified that she did not remember any details about the trip except that Ramirez-Lara started crying on the bus. Despite this affidavit, the IJ denied the motion to reconsider.

The IJ also denied Ramirez-Lara's applications for adjustment of status and cancellation of removal, as well as his request for voluntary departure. Reiterating that Ramirez-Lara had not shown that he was lawfully admitted, the IJ held that he was statutorily ineligible for adjustment of status and, alternatively, that his two DWI-related convictions did not entitle him to adjustment as a matter of discretion. Similarly, the IJ held that Ramirez-Lara was statutorily ineligible for cancellation of removal and declined to grant it as an exercise of discretion. Having done so, the IJ ordered that Ramirez-Lara be removed to Mexico.

## B.

On appeal to the BIA, Ramirez-Lara challenged the denial of his wave-through claim, application for adjustment of status, and request for voluntary departure. He expressly abandoned appealing the denial of cancellation of removal.

Citing only the "evidentiary gap" of Georgina's testimony, the BIA did "not find clear factual or legal error in the Immigration Judge's determination that the respondent is removable as charged." Nor did it quibble with the denial of adjustment of status. Citing *Matter of Castillo-Perez*, 27 I. & N. Dec. 664, 673 (AG 2019), the BIA "agree[d] . . . that [Ramirez-Lara] did not establish his statutory eligibility for adjustment of status . . . , or that he merited such relief in the exercise of discretion." After affirming that Ramirez-Lara was not entitled to voluntary departure, the BIA dismissed the appeal.

## II.

Now on petition for review, Ramirez-Lara makes three arguments. First, he reasserts that he is not removable because he was waved through into the United States. Second, he contends that the IJ and BIA erred by finding him statutorily ineligible for adjustment of status. And third, he

argues that in denying adjustment of status as a matter of discretion and voluntary departure as a matter of statutory eligibility and discretion, the IJ and BIA erred by applying the attorney general's decision in *Matter of Castillo-Perez* retroactively to his DWI-related convictions.

## A.

"We review the BIA's decision, and we review the IJ's decision only to the extent it influenced the BIA." *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021). This court reviews the BIA's legal conclusions *de novo* and its findings of fact for substantial evidence. *Id.* Under the substantial evidence standard, we may not reverse factual findings unless the alien proves "that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005).

## B.

First, Ramirez-Lara reasserts that he is not removable because he was waved through into the United States as a child. We agree.

Aliens charged with removability must show by "clear and convincing evidence" that they are "lawfully present in the United States pursuant to a prior admission." 8 U.S.C. § 1229a(c)(2)(B). The term "admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Under BIA precedent, "admission" under § 1101(a)(13)(A) requires only "procedural regularity, not compliance with substantive legal requirements." *Quilantan*, 25 I. & N. Dec. at 290.[2] Thus, "an alien who

---

[2] This precedent has been recognized and applied by this court. *E.g.*, *Gomez v. Lynch*, 831 F.3d 652, 657, 658 (5th Cir. 2016); *Tula Rubio v. Lynch*, 787 F.3d 288, 292–93 (5th Cir. 2015); *Avalos-Martinez v. Johnson*, 560 F. App'x 385, 388–89 (5th Cir. 2014).

physically presents [him]self for questioning and makes no knowing false claim to citizenship" is "admitted" under § 1101(a)(13)(A) and "inspected and admitted" for adjustment of status purposes under § 1255(a). *Id.* at 291–93 (citing *Matter of Areguillin*, 17 I. & N. Dec. 308 (BIA 1980)). The parties do not dispute that these "wave through" admissions count as "admissions" for purposes of removability and adjustment of status. They dispute only whether the BIA correctly concluded that Ramirez-Lara was not waved through.

Ramirez-Lara has shown that "the evidence is so compelling that no reasonable factfinder" could agree with the BIA that he was not waved through. *Zhao*, 404 F.3d at 306. The immigration officer knew that Arcelia was Ramirez-Lara's mother, did not ask her for his documentation, and allowed both of them into the United States.

At his immigration hearing, Ramirez-Lara—who the IJ found to be credible—presented two first-hand witnesses to his arrival in the United States. Berta testified that the immigration officer knew that Arcelia was Ramirez-Lara's mother. When the immigration officer asked why Ramirez-Lara was crying, Berta said, "because he wants to go with his mother," who Berta indicated was further back on the bus. In response, the immigration officer told her to take Ramirez-Lara to Arcelia, which Georgina did. And when the immigration officer arrived at Arcelia's seat to check her documentation, Arcelia testified that the immigration officer did not ask her anything about her son, who she was holding in her arms. Under these circumstances, no reasonable factfinder could conclude that Ramirez-Lara was not waved through.

This is true even if Georgina falsely represented Ramirez-Lara's status. The immigration officer knew that Arcelia, and not Georgina or Berta, was Ramirez-Lara's mother. And the immigration officer knew that

Arcelia, who was holding Ramirez-Lara at the time, needed documentation to enter the United States. Where the immigration officer knew who Ramirez-Lara's mother was, knew she needed documentation to enter the United States, and had the opportunity to check her documentation and ask about her son's status, a sixteen-year-old's false representation would not be attributable to Ramirez-Lara for purposes of wave-through admission.

C.

Next, Ramirez-Lara contends that the IJ and BIA erred by denying his application for adjustment of status. While we lack jurisdiction to review the purely discretionary denial of adjustment of status, we hold that the BIA erred in holding that Ramirez-Lara was statutorily ineligible.

As with cancellation of removal, whether an alien is statutorily eligible for adjustment of status involves questions of law that we review *de novo*. 8 U.S.C. § 1252(a)(2)(D); *see Trejo v. Garland*, 3 F.4th 760, 766–67 (5th Cir. 2021). However, we lack jurisdiction to review denials of discretionary relief based purely on the attorney general's discretion. 8 U.S.C. § 1252(a)(2)(B); *Hadwani v. Gonzales*, 445 F.3d 798, 800 (5th Cir. 2006). Furthermore, we "lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)." *Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022).

Adjustment of status permits the attorney general to "adjust" the "status of an alien who was inspected and admitted or paroled into the United States . . . to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a). Aliens who have been "inspected and admitted or paroled" are eligible for adjustment of status if: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent

residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." *Id.*

The IJ and BIA held that Ramirez-Lara was statutorily ineligible for adjustment of status because he was not "inspected and admitted" into the United States. This was error for the same reason that Ramirez-Lara is not removable. In *Quilantan*, the BIA held that a wave-through admission satisfies the "inspected and admitted" requirement for adjustment of status in § 1255(a). 25 I. & N. Dec. at 291–93. We agree, and because we have already held that Ramirez-Lara was waved through to the United States, Ramirez-Lara has been "inspected and admitted" for purposes of adjustment of removal. Therefore, the BIA erred by holding that Ramirez-Lara was statutorily ineligible for adjustment of status on this basis.

However, adjustment of status does not end here. Because adjustment of status is discretionary relief, in addition to meeting the statutory requirements the alien must also show that he merits an exercise of the attorney general's discretion. 8 U.S.C. § 1255(a).

As an alternative to Ramirez-Lara's purported statutory ineligibility, the IJ also denied adjustment of status as a matter of discretion. It noted that the attorney general has instructed that "any decision to grant or deny adjustment of status . . . should include a careful analysis of whether an applicant with multiple DWI convictions merits such relief as a matter of discretion." *Matter of Castillo-Perez*, 27 I. & N. Dec. 664, 673 n.3 (AG 2019). "Because [Ramirez-Lara] effectively has two DWI convictions, both of which are recent, and because [Ramirez-Lara] has failed to supply sufficient evidence . . . to overcome the presumption against a favorable exercise of discretion," the IJ held that Ramirez-Lara did not merit its discretion. The BIA affirmed, also citing *Castillo-Perez*.

No. 21-60045

Ramirez-Lara argues that the retroactive application of *Castillo-Perez*, a 2019 case, to his pre-2019 DWI-related convictions was wrong as a matter of law and violates the Due Process Clause. But while we may review an alien's statutory eligibility, we may not review the attorney general's purely discretionary decision to deny adjustment of status. 8 U.S.C. § 1252(a)(2)(B); *e.g.*, *Hadwani*, 445 F.3d at 800. Though phrased as errors of law, Ramirez-Lara's objections to the application of *Castillo-Perez* ask us to do just that. We lack jurisdiction to consider this argument.[3]

## D.

Finally, Ramirez-Lara argues that the IJ and BIA improperly applied *Castillo-Perez* retroactively to deny his request for voluntary departure, both as a matter of statutory eligibility and discretion. But we lack jurisdiction to consider these claims because they are unexhausted. *See* 8 U.S.C. § 1252(d) (providing that courts may review final orders of removal "only if . . . the alien has exhausted all administrative remedies as of right"). When a petitioner alleges that the IJ erred, the issue is unexhausted when it "is not raised in the first instance before the BIA[.]" *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) (quotation omitted). Similarly, when a petitioner alleges that the BIA's decision "results in a new issue," such as a due process violation, the issue is unexhausted when it is not raised in a motion for reconsideration before the BIA. *Martinez-Guevara v. Garland*, 27 F.4th 353, 360 (5th Cir. 2022) (quotation omitted).

Despite his current contention that the IJ improperly applied *Castillo-Perez* retroactively, Ramirez-Lara did not raise this issue to the BIA on direct appeal. Alternatively, even if these were "new issues" that could not have

---

[3] We lack jurisdiction over this argument for the additional reason that it is unexhausted. *See infra* Part II.D.

No. 21-60045

been raised on direct appeal, Ramirez-Lara did not raise them as soon as he could in a motion for reconsideration.  Because these issues are unexhausted, we lack jurisdiction to consider them.     8 U.S.C. § 1252(d); *Martinez-Guevara*, 27 F.4th at 360.[4]

\*     \*     \*

For these reasons, we GRANT in part and DISMISS in part the petition for review.  We GRANT the petition as to whether Ramirez-Lara was waved through for purposes of removability and adjustment of status.  We DISMISS the petition as to the unexhausted retroactive-application claims and the purely discretionary denials of adjustment of status and voluntary departure.  Accordingly, we VACATE the BIA's order and REMAND to the BIA for further proceedings in light of this opinion.

---

[4] Furthermore, we lack jurisdiction over the discretionary denial of voluntary departure for the additional reason that we lack jurisdiction to review the attorney general's purely discretionary denial of discretionary relief.  *See* 8 U.S.C. § 1252(a)(2)(B); *e.g.*, *Hadwani*, 445 F.3d at 800.